STATE OF NORTH CAROLINA v. LONNIE BENGE.

(Filed 13 December, 1967.)

**1. Homicide § 6—**

Manslaughter is the unlawful killing of a human being without malice and without premeditation or deliberation.

**2. Homicide § 9—**

While ordinarily a person free from fault is under no duty to retreat when attacked in his own home, regardless of the character of the assault against him, even so, he may not use excessive force in repelling the attack and overcoming his adversary

**3. Homicide § 20—**

Evidence permitting inferences that deceased came to the home in which defendant resided, renewing threats against defendant, the defendant armed himself with a pistol, went to the door and shot deceased, that defendant followed deceased outside defendant's habitation and shot him at least three times as deceased lay on the ground, and that defendant admitted that he never saw a weapon in deceased's hands, *is held* sufficient to sustain conviction of manslaughter, since it tends to show that defendant used excessive force in repelling the attack.

APPEAL by defendant from *Campbell, J.,* February 1967 Session of CALDWELL.

Defendant was charged under a bill of indictment with first degree murder. Upon call of the case the Solicitor elected to try defendant for second degree murder or manslaughter, as the evidence might warrant. Defendant entered a plea of not guilty.

The State's evidence tended to show that on the night of 13 August 1966, defendant was at the home of his sister and her husband, where he resided. Shortly after 11:00 P.M. Tom Spears, the deceased, came to the front door, a transparent storm door, and made threats against the life of defendant, who was sitting in the living room inside the front door. Defendant's sister saw Tom Spears open the door and defendant jump up and go to the door. She heard two shots, but did not know who had fired them. Her husband, Andrew Spears, father of deceased, was in the bedroom at the time and heard three or four shots fired in rapid succession.

Tom Spears was found lying in the yard in front of. the door stoop. Andrew Spears looked out the front door and saw defendant standing by his car. He then heard a shot, saw defendant fall and the gun pitch out of defendant's hand. Andrew Spears picked up the 38 special Smith and Wesson, the only weapon he saw, and gave it to officer Kenneth Huss when he arrived.

Huss, a member of the Police Department of the town of Hudson, was about a third of a mile away at the time of the shooting. He testified that he heard four rapid-fire shots and then another shot fifteen or twenty seconds later. At the scene, Huss examined the clothing and contents of Tom Spear's pockets and found no weapon. Huss turned the pistol over to Charles E. Whitman of the S. B. I.

Charles E. Whitman stated that the pistol had been in his possession since the incident and that it had five spent cartridges and one live cartridge in the chamber. Whitman's examination of the scene revealed evidence of blood on the door stoop and blood stains on the door facing on the inside of the storm door. He also observed blood on a rumpled door mat, located at the door, and was of the opinion that the mat had been used to wipe up blood. Andrew Spears denied that he or his wife had wiped up any blood with the door mats. In Whitman's opinion, when he arrived at the scene Tom Spears was dead.

Dr. Paul Tilley, Caldwell County Coroner, testified that he had examined Tom Spear's body and found four wounds, all near the mid-line of the chest, apparently gunshot wounds, which, in his opinion, caused death.

At the conclusion of the State's evidence, defendant's motion for nonsuit was denied.

Defendant, Lonnie Benge, testified in substance as follows: He was married with five children but was separated from his wife at the time of the alleged offense. He had not lived with his wife from March to August 1966, but had visited his children at his wife's home during that period. During those visits, Tom Spears was at defendant's wife's house and told defendant not to come there and had threatened to kill him. On the night of 13 August 1966, defendant saw Tom Spears sitting in a car with defendant's wife at her house. Defendant conversed with his wife concerning the whereabouts of his daughter. As defendant started to leave, Tom Spears threatened to kill him. Defendant then drove straight home. Defendant, while standing in the living room, saw Tom Spears approach in his car and stop outside. Spears appeared to get something out of the dash of his car. Defendant stated that he thought Spears was coming to kill him, and that he got a gun out of the dresser

drawer, but did not intend to kill Spears. Defendant sat down in a chair and laid the gun beside him. Tom came to the door and said: "Lonnie, I have come here to get you tonight. Tonight is going to be the night." Defendant replied that he wanted no trouble, but Spears repeated his threat. Spears was reaching in his hip pocket, but never took anything out of his pocket. He threatened to kill defendant again and jumped at the storm door. Defendant stated: "I got up, and I got that gun, and he started in there. I told him not to come. He started in there anyway. I shot him." Spears fell in the yard, and when defendant stepped off the steps, he fell on top of Spears. Spears got hold of the gun and shot defendant, and as they scuffled defendant got the gun from Spears and shot him two or three more times. Defendant stated that he did not shoot himself, that he blacked out after he got up off of Spears. He stated that he did not see Spears with a weapon and that Spears never got inside the house.

At the conclusion of all the evidence defendant renewed his motion for nonsuit, which was denied.

The jury returned a verdict of guilty of manslaughter. Defendant's motion to set aside the verdict was overruled and judgment was entered on the verdict.

Defendant appealed.

*Attorney General Bruton and Assistant Attorney General Rich for the State.*

*Ted G. West for defendant.*

PER CURIAM. Defendant contends the court erred in denying his motion for nonsuit at the close of all the evidence.

Manslaughter is the unlawful killing of a human being without malice and without premeditation or deliberation. *State v. Street,* 241 N.C. 689, 86 S.E. 2d 277.

Defendant cites the case of *State v. Johnson,* 261 N.C. 727, 136 S.E. 2d 84, to support his position. This case correctly states the law as follows:

> "Ordinarily, when a person who is free from fault in bringing on a diffculty, is attacked in his own home or on his own premises, the law imposes on him no duty to retreat before he can justify his fighting in self defense, regardless of the character of the assault, but is entitled to stand his ground, to repel force with force, and to increase his force, so as not only to resist, but also to overcome the assault and secure himself from all harm. *This, of course, would not excuse the defendant if he used ex-*

*cessive force in repelling the attack and overcoming his adversary. State v. Francis,* 252 N.C. 57, 112 S.E. 2d 756; *State v. Frizzelle,* 243 N.C. 49, 89 S.E. 2d 725." (Emphasis ours.)

In the instant case defendant admits shooting deceased with a pistol and further admits that he never saw a weapon in deceased's hand. There is other evidence from which it can be inferred that defendant's repeated firing was unnecessary to his own self-defense, and that defendant followed deceased outside his habitation and shot him at least three times as he lay on the ground.

In order to make good the plea of self-defense, the force used must be exerted in good faith to prevent the threatened injury and to repel, but the question of excessive force is to be determined by the jury. *State v. Cox,* 153 N.C. 638, 69 S.E. 419. Considering the evidence in the light most favorable to the State, we hold that the trial judge properly overruled defendant's motion for nonsuit at the close of all the evidence.

Patently, the State's evidence is of sufficient probative force to sustain the verdict, and the assignment of error to the court's refusal to set the verdict aside for lack of evidence is overruled.

No error.